[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO SET ASIDE VERDICT
This case arises out of an intimate relationship between the plaintiff, Suzanne Nevins, and the defendant, Mary Norris, in which they cohabited for a period of approximately nine years in a house in Granby, Connecticut, owned by Norris. In 1993 Norris ended the relationship and moved out of her own house. Norris allowed Nevins to remain in that house rent free for more than a year before insisting that Nevins leave. That insistence did not cause Nevins to leave the house of Norris, but, instead, prompted this action against Norris in which Nevins sought damages and equitable relief, including the imposition of a constructive trust in her favor on the Granby house of Norris.
After trial, the jury rendered a verdict in favor of the Nevins on Count One of the Complaint, which alleged the breach of an express contract and Count Nine of the Complaint, which alleged that Norris had been unjustly enriched by Nevins. The jury rendered a verdict in favor of Norris on Count Two (Constructive Trust), Count Three (Breach of Implied Contract), Count Four (Negligent Misrepresentation), Count Five (Intentional Misrepresentation), Count Six (Negligence), Count Seven CT Page 6988 (Negligent Infliction of Emotional Distress), Count Eight (Intentional Infliction of Emotional Distress), and Count Ten (Breach of Contract to Pool Earnings).
The jury also rendered a verdict on the Counterclaim filed by Norris. That verdict was rendered in favor of Nevins on Count One, which alleged that Nevins was unjustly enriched by the amount of use and occupancy she should have paid while living in Norris' house after Norris moved out. The jury rendered a verdict in favor of Norris on Count Two of the Counterclaim, which claimed trespass against Nevins based on her remaining on the property of Norris after Norris requested that she leave.
The jury awarded damages in favor of Nevins on the Complaint in the amount of $16,800 and awarded damages in favor of Norris on the Counterclaim in the amount of $16,800. Norris has moved to set aside the verdict on the Complaint, but Nevins has not moved to set aside the verdict on the Counterclaim.
Based on the evidence presented at trial the jury could have found the following facts. Nevins first met Norris in September 1981 when Nevins began working as a nurse at Mt. Sinai hospital where Norris was a physician on staff. In 1982 Nevins began to socialize with Norris and in 1983 the two became involved in an intimate relationship. Nevins moved into the Granby house of Norris in September 1984.
When Nevins moved in with Norris she was working at Proctor and Gamble as a nurse educator. She left her job at Proctor and Gamble several months after moving in with Norris due to reasons related to that job. In the Spring of 1985 Nevins took a job as assistant head nurse at Mt. Sinai Hospital. She left that job in the summer of 1986 due to health problems.
The health problems which Nevins began to experience in 1986 were the beginning stages of a condition which Nevins described as "environmental illness." Nevins did not work after 1986 and was supported completely by Norris. Nevins even had health insurance provided through Norris. Nevins did much of the household work, shopping and personal errands for Norris from 1984 until 1990. But Norris did employ others to do house cleaning during that period. During their relationship Norris and Nevins traveled frequently. After 1990 Nevins' illness became more debilitating and her ability to shop or do any housework were significantly decreased. CT Page 6989
Around 1987, Norris bought a ski condominium in Stowe, Vermont. Nevins contributed two to three thousand dollars from her credit union towards the purchase price of the condominium. Her name was not on the deed and she did not sign the mortgage note for the loan to purchase the condominium.
In addition to the money she put towards the condominium, Nevins also contributed $7,825 towards the purchase of a vehicle which was in the name of Norris, but which Nevins used. During the period in which Nevins and Norris lived together, Norris had a 1991 Chevrolet Blazer, a 1987 Chevrolet Blazer and an S-10 Pickup. Norris paid all of the insurance on those three vehicles, and also paid for gas and maintenance. Nevins had the benefit of driving one of those vehicle from 1987 until 1995 when Norris allowed her to chose a vehicle to keep as her own. She chose the S-10 and Norris gave that vehicle to her.
At the trial Nevins testified that she and Norris did not enter into any written or verbal contracts. Nevins also testified that she did not expect Norris to pay her for the household services that she provided. Nevins said that she had provided those services due to the nature of the relationship between her and Norris.
In Labbe v. Hartford Pension Commission, 239 Conn. 168, 192,193, ___ A.2d ___ (1996) the Connecticut Supreme Court recently reiterated the standard for setting aside a verdict:
 "The trial court should not set a verdict aside where there was some evidence upon which the jury could reasonably have based its verdict, but should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that [the jurors] or some of them were influenced by prejudice, corruption or partiality. . . . Within these parameters, furthermore, the trial court may set a verdict aside even if the evidence was conflicting and there was direct evidence in favor of the party who prevailed with the jury. . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of abroad legal discretion . . . ." (Citations omitted; internal quotation marks omitted.) American National Fire Ins. Co. v. Schuss, 221 Conn. 768, 774, 607 A.2d 418 (1992); Palomba v. Gray,
CT Page 6990 supra, 24-25, Roma v. Thames River Specialties Co., 90 Conn. 18, 19-20, 96 A. 169 (1915).
 "Limiting that discretion, however, is the litigants' constitutional right to have issues of fact determined by a jury where there is room for a reasonable difference of opinion among fair-minded jurors. . . ." (Internal quotation marks omitted.) American National Fire Ins. Co. v. Schuss,
supra, 221 Conn. 774; Palomba v. Gray, supra, 208 Conn. 24-25; Roma v. Thames River Specialties Co., supra, 90 Conn. 19-20. Because, "in setting aside the verdict, the trial court has deprived the party in whose favor the verdict was rendered of [the] constitutional right to have factual issues resolved by the jury, we must examine the evidential basis of the verdict itself to determine whether the trial court abused its discretion." Palomba v. Gray, supra, 23; Jacobs v. Goodspeed, 180 Conn. 415, 417, 429 A.2d 915
(1980). In so doing, we "must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial . . . ." (Internal quotation marks omitted.) Mulligan v. Rioux, 229 Conn. 716, 726, 643 A.2d 1226 (1994), on remand, 38 Conn. App. 546, 662 A.2d 153
(1995); Bleich v. Ortiz, 196 Conn. 498, 501, 493 A.2d 236
(1985).
There was absolutely no evidence from which a jury could have found an express contract between Nevins and Norris. Indeed, Nevins, herself, testified on several occasions that there was no express agreement or contract between the two and that she performed the household jobs she did for Norris out of love and affection and in consideration of the fact that they lived together. However, "cohabitation alone does not create any contractual relationship or, unlike marriage, impose other legal duties upon the parties." Boland v. Catalano, 202 Conn. 333, 339,521 A.2d 142 (1987). Therefore, the court must set aside the verdict on Count One.
"Unjust enrichment applies `wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract.' 5 Williston, Contracts (Rev. Ed.) 1479. `A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a CT Page 6991 benefit which has come to him at the expense of another. Franksv. Lockwood, 146 Conn. 273, 278, 150 A.2d 215; Schleicher v.Schleicher, 120 Conn. 528, 534, 182 A. 162.' Connecticut NationalBank v. Chapman, 153 Conn. 393, 399, 216 A.2d 814. `With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard.' Cecio Bros., Inc. v.Greenwich, 156 Conn. 561, 564-65, 244 A.2d 404." ProvidenceElectric Co. v. Sutton Place, Inc., 161 Conn. 242, 246,287 A.2d 379 (1971).
There was no evidence that Norris was unjustly enriched by Nevins. In return for providing various household services for which she did not expect to be paid, several thousand dollars contributed towards a ski condominium and $7,825 contributed towards the purchase of a vehicle, the plaintiff received a vehicle, a place to live rent free for over ten years, and complete financial support from 1986, when she ceased earning any money, through 1993, when the relationship with Norris ended. During the late 1980's Nevins' "environmental illness" rendered her incapable performing many household tasks. Nevertheless, Norris continued to support Nevins completely. The benefits provided to Norris by Nevins were more than offset by the benefits Nevins received from Norris and certainly did not constitute unjust enrichment to Norris. Therefore, the verdict on Count Nine is also set aside.
In awarding the same amount of damages to both the plaintiff and the defendant, the jury may have been attempting to do justice. Perhaps the verdict expressed the jury's belief that a courtroom was the improper forum to seek redress for the emotional distress caused by the ending of a love relationship. However, the jury was bound to follow the law. It failed to do so. This court must set aside the verdict "where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles." Labbe v. Hartford Pension Commission,239 Conn. 168, 192, 193, ___ A.2d ___ (1996).
By the court,
Aurigemma, J. CT Page 6992